UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEGGY WOODS,<br><br>                Plaintiff,<br>    v.<br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br>                Defendant. | Case No. CV 09-1547-OP<br><br>MEMORANDUM OPINION; ORDER |

The Court[1] now rules as follows with respect to the disputed issues listed in the Joint Stipulation ("JS").[2]

/ / /
/ / /
/ / /
/ / /

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action. (See Dkt. Nos. 8, 9.)

[2] As stated in the Court's Case Management Order, the decision in this case is being made on the basis of the pleadings, the Administrative Record, and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

# I.
# DISPUTED ISSUE

As reflected in the Joint Stipulation, the sole disputed issue which Plaintiff raises as the ground for reversal and/or remand is whether the Administrative Law Judge ("ALJ") properly determined that Plaintiff's alleged impairments did not meet Listing 2.09. (JS at 4.)

# II.
# STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

# III.
# DISCUSSION

**A.  The ALJ Committed Legal Error in Finding that Plaintiff's Condition Did Not Meet or Equal Any Listing.**

Plaintiff claims that the ALJ erred by failing to determine that her impairments equaled a listing. (JS at 12.) The Court agrees with Plaintiff's

contention.

1. **Applicable Law.**

At the third step of the sequential analysis, the ALJ must determine whether a claimant's impairment meets or equals an impairment listed in the "Listing of Impairments" ("Listings"). See 20 C.F.R. Part 404, Subpt. P, App. 1; see also Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999). The Listings set forth certain impairments which are presumed to be of sufficient severity to prevent the performance of work. See C.F.R. §§ 404.1525(a), 416.925(a). If a claimant has an impairment which meets or equals a listed impairment, disability is presumed and benefits are awarded. See 20 C.F.R. §§ 404.1520(d), 416.920(d); Barker v. Sec'y of Health & Human Servs., 882 F.2d 1474, 1477 (9th Cir. 1989). An impairment "meets" a listed impairment if it is in the Listings. See 20 C.F.R. §§ 404.1520(d), 416.920(d)

The claimant has the burden of proving disability, including disability based on the Listing. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995); Vick v. Comm'r of Soc. Sec. Admin., 57 F. Supp. 2d 1077, 1087 (D. Or. 1999). The mere diagnosis of a listed condition does not establish that a claimant "meets" the Listings. Young v. Sullivan, 911 F.2d 180, 183-84 (9th Cir. 1990). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990); see also 20 C.F.R. § 404.1525(d). Thus, the ALJ must find that the claimant has an impairment which corresponds to a listed impairment in diagnosis, severity, and duration.

2. **Listing 2.09.**

Listing 2.09 provides that a person meets the criteria for this section if the medical evidence shows a: "Loss of speech due to any cause, with inability to

produce by any means speech that can be heard, understood, or sustained." 20 C.F.R. Subpt. P, App.1, § 2.09. Social Security Ruling ("SSR") 82-57[3] provides an explanation regarding how loss of speech should be evaluated by the ALJ. SSR 82-57 states:

> Ordinarily, when an individual's impairment prevents effective speech, the loss of function is sufficiently severe so that an allowance under **Listing 2.09** is justified on the basis of medical considerations alone, unless such a finding is rebutted by work activity. To speak effectively, an individual must be able to produce speech that can be heard, understood, and sustained well enough to permit useful communication in social and vocational settings. These criteria are applicable to the production of speech whether by natural function of the voice mechanism or by the use of a prosthetic device.
>
> Three attributes of speech pertinent to the evaluation of speech proficiency are: (1) audibility -- the ability to speak at a level sufficient to be heard; (2) intelligibility -- the ability to articulate and to link the phonetic units of speech with sufficient accuracy to be understood; and (3) functional efficiency -- the ability to produce and sustain a serviceably fast rate of speech output over a useful period of time. When at least *one* of those attributes is missing, overall speech function is not considered effective.
>
> When a refined assessment of speech proficiency is necessary, it should be made by a licensed otolaryngologist or a speech therapist whose evaluation should be based *both* on personally listening to the claimant's speech and on a history of the claimant's performance of the individual's speech capacity.

---

[3] Social Security Rulings are binding on ALJs. See Terry v. Sullivan, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990).

4

SSR 82-57 (emphasis in original).

   3.   **Analysis.**

Here, Plaintiff contends that her medically determinable impairment met Listing 2.09. (JS at 3-9, 14-19.) In support of her contention, Plaintiff relies upon the opinions of a consultative otolaryngologist and a speech pathologist, coupled with several instances in the record demonstrating her severe voice disorder. (Id.) First, on December 18, 2006, consultative physician, Dr. James Montagano evaluated Plaintiff with respect to her voice. (Administrative Record "AR") at 211-12.) Dr. Montagano observed her voice as "halting and difficult to understand; it was strikingly reminiscent of the voice seen in spastic dysphonia."[4] (Id. at 212.) Dr. Montagano opined:

> Peggy Woods has dysphonia that she claims arose immediately as a result of having been choked 24 years ago. There is no history or physical evidence of laryngeal fracture or arytenoids displacement. Her voice and exam strongly suggest adductor type spastic dysphonia. I could find no reference on a search of textbooks for an association between trauma and spastic dysphonia, as the condition is idiopathic[5] and thought to be of central origin. There is no surgical treatment for the condition, [and] some success has been found with Botox injections. I believe that the patient should have a trial of speech therapy.

(Id.)

---

[4] Dysphonia is defined as: "any impairment of voice; a difficulty in speaking." Dorland's Illustrated Medical Dictionary ("DIMD"), 576 (30th ed. 2003). Spastic dysphonia is defined as: "difficulty in speaking due to excessively vigorous adduction, or rarely abduction, of the vocal cords against each other, so that the voice is hoarse, soft, and strained." Id. at 577.

[5] Idiopathic is defined as: "of unknown cause or spontaneous origin." DIDM at 905.

5

1    Additionally, on December 21, 2006, Barbara Vasser, M.S., a licensed
2 speech pathologist, completed a speech and language evaluation of Plaintiff. (Id.
3 at 208-10.) Ms. Vasser observed Plaintiff's voice as "soft, almost inaudible," and
4 she spoke with "pitch breaks and raspy sound production." (Id. at 209.) Ms.
5 Vasser also indicated that Plaintiff's "[i]ntelligibility is compromised by limited
6 sound production." (Id. at 210.) Ms. Vasser concluded that Plaintiff "presents
7 with a severe voice disorder," and should seek a more thorough evaluation from an
8 otolaryngologist. (Id.)
9    Finally, Plaintiff points to several instances during the hearing where her
10 voice was so low or inaudible that the ALJ had to ask for clarification from
11 Plaintiff's attorney, or ask Plaintiff to repeat her statements. (Id. at 221, 224-29,
12 231-32, 237, 239, 240-41.) Notably, Plaintiff's testimony was inaudible several
13 times during the hearing, despite speaking directly into the microphone.[6] (Id.)
14    In his decision, the ALJ found Plaintiff to have, *inter alia*, the severe
15 impairment of "a voice disorder of uncertain etiology." (Id. at 23.) The ALJ then
16 found that Plaintiff's voice impairment did not meet or medically equal a listed
17 impairment, including impairments related to speech. (Id. at 23-24.) The ALJ
18 assessed Plaintiff's residual functional capacity ("RFC") related to speech as
19 follows: "The claimant's speech can be understood only when the person spoken
20 to faces the claimant and listens carefully." (Id. at 24.) Thereafter, the ALJ

---

[6] Defendant argues that the microphone was only used for recording purposes at the hearing. (JS at 12.) The record is inconclusive as to whether the microphone solely records a claimant's testimony, or whether it both records a claimant's testimony and amplifies it. (AR at 223.) While moving closer to the microphone would not make Plaintiff's voice louder, it is unclear whether speaking into the microphone at the original distance served solely for recording purposes or for both recording and amplification purposes. Regardless, the record clearly indicates portions of Plaintiff's testimony as "inaudible." (Id. at 221, 224-29, 231-32, 237, 239, 240-41.)

expanded upon Plaintiff's voice disorder as follows:

> [T]he record indicates that the claimant suffers from an impairment of the voice that limits her to soft speech. Speech pathology evaluation has revealed the claimant has a raspy voice, but has normal articulation. Board-certified otolaryngologist James Montagano, M.D., examined the claimant in December 2006. Dr. Montagano could not ascertain the etiology of the claimant's voice disorder, but indicated that there was no evidence of a laryngeal fracture. He indicated that the claimant's presentation was consistent with adductor type spastic dysphonia, which [is] a condition of "central origin." He indicated that there was no surgical treatment available for such a condition, but indicated that some patients had achieved improvements with laryngeal Botox injections. In any event, although it is clear that the claimant has impairment of her voice, her voice is intelligible upon careful listening as described in the residual functional capacity.

(Id. at 26 (citations omitted).)

The Court finds that the ALJ committed legal error by improperly determining that Plaintiff failed to meet Listing 2.09. In the decision, the ALJ failed to properly analyze Plaintiff's voice impairment as to audibility, intelligibility, and functional efficiency. The ALJ then inserted boilerplate language that Plaintiff's voice impairment did not meet a listing. (Id. at 23-24); see also id. at 82-57. Moreover, the ALJ appears to have rejected the opinions of the Dr. Montagano and Ms. Wasser based upon the testimony of the vocational expert ("VE"), who is neither an otolaryngologist nor a speech pathologist.[7] (AR at 26, 239); see also id. at 82-57. While Plaintiff does not raise this issue, the

---

[7] At the hearing, the VE testified that Plaintiff could be understood by another person, if that person listened carefully and faced toward Plaintiff. (AR at 239.)

7

Court is unconvinced that the ALJ properly rejected or discounted the opinions of Dr. Montagano and Ms. Wasser. The ALJ also failed to reconcile Plaintiff's RFC related to her voice impairments with the evidence of Plaintiff's voice disorder and speech difficulty, as indicated by the several instances at the hearing where the ALJ sought clarification of Plaintiff's inaudible testimony, or the opinions in the record demonstrating Plaintiff's severe voice disorder. Finally, to the extent that the ALJ determined that Listing 2.09 was not met as it required an absolute inability to produce speech, this is also error. Listing 2.09 may be met by individuals who "have difficulties with speech communication, including an inability to sustain effective speech." See Hajar v. Astrue, 2009 WL 3170097, at *5 (C.D. Cal. Sept. 30, 2009); see also Meraz v. Barnhart, 300 F.Supp.2d 935, 941 (C.D. Cal. 2004); SSR 82-57.

Based on the foregoing, remand is warranted on the issue of whether Plaintiff meets Listing 2.09. On remand, the ALJ will have the opportunity to address this issue again and consider these issues in determining the merits of Plaintiff's case.[8]

**B.     This Case Should Be Remanded for Further Administrative Proceedings.**

The law is well established that remand for further proceedings is appropriate where additional proceedings could remedy defects in the Commissioner's decision. Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). Remand for payment of benefits is appropriate where no useful purpose would be

---

[8] Defendant relies on Beauvoir v. Chater, 104 F.3d 1432, 1434 (2nd Cir. 1997) for the proposition that the ALJ may consider hearing testimony to determine whether Listing 2.09 is met. (JS at 10.) While the ALJ may certainly consider the hearing testimony, the Court is unconvinced by the many "inaudible" instances in the hearing transcript that Plaintiff's voice was "intelligible upon careful listening." (AR at 26.) On remand, the ALJ should address this issue again, and, if required, develop the record further as to Plaintiff's voice disorder.

served by further administrative proceedings, <u>Kornock v. Harris</u>, 648 F.2d 525, 527 (9th Cir. 1980); where the record has been fully developed, <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986); or where remand would unnecessarily delay the receipt of benefits. <u>Bilby v. Schweiker</u>, 762 F.2d 716, 719 (9th Cir. 1985). Here, the Court concludes that further administrative proceedings would serve a useful purpose and remedy the administrative defects discussed herein.

## IV.

## **ORDER**

Pursuant to sentence four of 42 U.S.C. § 405(g), IT IS HEREBY ORDERED THAT Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings consistent with this Memorandum Opinion.

Dated: January 5, 2010

HONORABLE OSWALD PARADA
United States Magistrate Judge